# In The United States Court of Federal Claims

No. 06-168V

**This Opinion Will Not Be Published in the U.S. Court of Federal Claims Reporter Because It Does Not Add Significantly to the Body of Law.**

(Filed under seal:  August 27, 2007)

(Reissued:  September 14, 2007)[1]

_____

DEBRA ANN ANDERSON,

        Petitioner,

   v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

        Respondent.

_____

**OPINION**

_____

**ALLEGRA, Judge:**

    Debra Ann Anderson (petitioner) seeks review of a Special Master's decision rejecting her vaccine injury claims under the National Childhood Vaccine Injury Act of 1986, as amended, 42 U.S.C. §§ 300aa-1 *et seq*. (the Vaccine Act).  The Special Master concluded that petitioner failed to prove causation-in-fact, and dismissed the petition with prejudice.  Upon review, this court concludes that the Special Master's determination was neither arbitrary, capricious, nor an abuse of discretion, and affirms the ruling of the Special Master.

**I.    Background**

    On October 24, 2005, petitioner received a flu shot in her left arm at Sioux Valley Clinic, in Sioux Falls, South Dakota.  Four days later, on October 28, 2005, she visited a chiropractor, Dr. D.E. Anderson, complaining that her left arm ached and that she could not turn her head.  She returned to Sioux Valley Clinic on November 4 and 7, 2005, stating that, on a scale of one to ten, her pain was "level 10," and that she had perceived immediate pain following her vaccination.  Dr. Clayton Van Balen, M.D., indicated that petitioner's pain was probably the result of a musculoskeletal spasm.

---

[1] An unredacted version of this opinion was issued under seal on August 27, 2007.  The parties were given an opportunity to propose redactions, but no such proposals were made.

On November 10, 2005, petitioner visited Dr. Kim Pederson, M.D., at the Ohara Managed Care Urgent Care Clinic. During this visit, Dr. Pederson determined that, although petitioner complained of pain and subjective numbness in her left arm and hand, she had a normal range of motion. In his records, Dr. Pederson commented that petitioner's flu shot appeared to have been administered somewhat higher up on her arm than is normal, but that he could not determine positively the location of the injection. Petitioner was referred to McGreevy Clinic West for an x-ray of her shoulder, which evinced no abnormality. Petitioner returned to see Dr. Pederson several times in late November and early December 2005. During one of these visits, Dr. Pederson wrote in petitioner's medical records that she had experienced "left arm [pain] that may be secondary to her influenza vaccine but there also could be some problem related to the disk disease in her neck."

Dr. Pederson referred petitioner to Dr. Todd Zimprich, M.D., for a series of nerve conduction studies. These studies produced normal results – specifically, showing that petitioner's muscle bulk, tone, and strength were normal and symmetric in the various muscle groups of her arms and legs; that her deep tendon reflexes were normal and symmetric; that her sensation was normal and symmetric to pin prick, light touch, and proprioception; and that there was no change in color, temperature, or appearance of the left upper arm as compared to the right. Dr. Zimprich noted that petitioner's medical records reflected a history of "somatoform" disorder as early as 1991. Despite the unexceptional results from her nerve conduction tests, petitioner continued to complain of "10+" pain during this time. Unable to determine the cause of petitioner's pain, Dr. Zimprich decided in early January 2006 to treat petitioner symptomatically, through physical therapy and painkillers. Petitioner also returned to her chiropractor, Dr. Anderson, for pain management.

In late 2005 or early 2006, petitioner filed a claim under the South Dakota Workers' Compensation program seeking compensation for the pain she was experiencing. On January 20, 2006, the insurance carrier, Liberty Mutual, notified petitioner that it was denying her claim. The letter included a report from Dr. Bruce Elkins, stating that "[petitioner's] condition is known as a somatoform disorder," and that "[i]n this case, there is no objective evidence of a physical condition known to be associated with an influenza vaccine." Shortly thereafter, on March 1, 2006, petitioner, acting *pro se*, filed a petition against the Secretary of Health and Human Services seeking compensation under the Vaccine Act, for injuries she allegedly sustained following her influenza vaccination. The case was referred to Special Master Millman pursuant to Rule 3 of the Vaccine Rules of the United States Court of Federal Claims (the Vaccine Rules). While the Special Master did not hold a formal hearing on the petition, she conducted four joint status conferences at which she explained petitioner's burden under the Vaccine Act and the types of evidence that could meet that burden. Following the fourth status conference, on October 13, 2006, the Special Master denied the petition, ruling that petitioner "has not made a prima facie case of causation in fact," and that "she has provided no objective proof that [her] reaction lasted more than six months." *Anderson v. Sec'y of Health and Human Servs.*, No. 06-186V, slip op. (Fed. Cl. Spec. Mstr. Oct. 13, 2006).

On October 27, 2006, petitioner filed a motion seeking review of the Special Master's decision dismissing her claim. At this time, petitioner continued to represent herself *pro se*. On March 29, 2007, attorney Timothy Litka filed a notice of appearance on behalf of petitioner. On

May 4, 2007, the court ordered petitioner to file an amended motion for review and a memorandum of objections. Petitioner timely filed that amended motion on May 24, 2007, and defendant filed its response on June 27, 2007. Having fully considered the filings of the parties and their respective positions, the court concludes that oral argument in this case is unnecessary.

## II.   DISCUSSION

This case is governed by the Vaccine Act, and the court has jurisdiction over petitioner's motion for review pursuant to 42 U.S.C. § 300aa-12(e)(2). When deciding a motion for review of a Special Master's decision, the court may:

> (A) uphold the findings of fact and conclusions of law of the Special Master and sustain the Special Master's decision;
>
> (B) set aside any findings of fact or conclusion of law of the Special Master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law; or
>
> (C) remand the petition to the Special Master for further action in accordance with the court's direction.

42 U.S.C. § 300aa-12(e)(2). Burnishing and combining these standards, the Federal Circuit has stated that this court "may set aside the decision of a special master only if the special master's fact findings are arbitrary and capricious, its legal conclusions are not in accordance with law, or its discretionary rulings are an abuse of discretion." *Turner v. Sec'y of Health and Human Servs.*, 268 F.3d 1334, 1337 (Fed. Cir. 2001) (citing 42 U.S.C. § 300aa-12(e)(2)(B)); *see also Munn v. Sec'y of Health and Human Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992); *Saunders v. Sec'y of Health and Human Servs.*, 25 F.3d 1031, 1033 (Fed. Cir. 1994); *Hart v. Sec'y of Health and Human Servs.*, 60 Fed. Cl. 598, 604 (2004). The last of these standards requires the court to "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971); *see also Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 105-06 (1983); *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057-58 (Fed. Cir. 2000).

The Special Master denied Ms. Anderson's petition on two independent grounds. First, the Special Master determined that petitioner failed to prove a causal relationship between the influenza vaccine and the pain she sustained following her inoculation. In this regard, the Vaccine Act requires petitioner to prove, by a preponderance of the evidence, that the injury was caused by the relevant vaccine. *See* 42 U.S.C. §§ 300aa-13(a)(1)(A), -11(c)(1)(C)(ii)(I); *Althen v. Sec'y of Health and Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005); *Munn*, 970 F.2d at 865.[2] In

---

[2] Alternatively, a petitioner may demonstrate that she has sustained a "table injury," as listed in the "Vaccine Injury Table" of 42 U.S.C. § 300aa-14(a) (as administratively altered). If an injury listed on that table occurs within a prescribed period after the time of inoculation, there is a presumption that the injury is compensable under the Vaccine Act. In other words, petitioners seeking redress for table injuries do not carry the burden of establishing a *prima facie* case of causation, because causation is presumed. *Munn*, 970 F.2d at 865. The facts of this case do not,

the case *sub judice*, the Special Master determined that petitioner "offered no evidence of causation except her own assertions." The Special Master noted that petitioner had failed to provide a medical expert report substantiating her claims, and that instead, "Dr. Pederson expressly [stated] that he cannot relate her complaints of arm pain to the influenza vaccination." In addition, the Special Master noted that petitioner had provided "no objective proof that [petitioner's] reaction lasted more than six months, as the Vaccine Act requires. 42 U.S.C. § 300aa-11(c)(1)(D)(i)."

Petitioner objects to the Special Master's determination on two grounds: first, she avers that the Special Master acted in an arbitrary and capricious manner by dismissing her case without an evidentiary hearing, "despite clear issues of factual dispute;" and second, she claims that the Special Master abused her discretion by not allowing petitioner "wide latitude" as a *pro se* litigant. The court will address these issues *seriatim*.

A.

"Under the Vaccine Act, special masters are charged to make vaccine proceedings expeditious, flexible, and less adversarial, but not at the expense of providing each party a 'full and fair opportunity to present its case and creating a record sufficient to allow review of the special master's decision.'" *Campbell ex rel. Campbell v. Sec'y of Health and Human Servs.*, 69 Fed.Cl. 775, 777 (2006) (citing 42 U.S.C. § 300aa-12(d)(3)(B) and Vaccine Rule 3(b)); *Hovey v. Sec'y of Health and Human Servs.*, 38 Fed. Cl. 397, 400-01 (1997)). Petitioner claims that the Special Master denied her a full and fair opportunity to present her case by failing to conduct an evidentiary hearing on her claims.

The Vaccine Rules afford the Special Master discretion in choosing whether to hold an evidentiary hearing, stating that he or she "may decide a case on the basis of written filings without an evidentiary hearing." Vaccine Rule 8(d); *see also Plummer v. Sec'y of Health and Human Servs.*, 24 Cl. Ct. 304, 307 (1991). However, this discretion is tempered by the requirement that each party have a full and fair opportunity to present its case, *Hovey*, 38 Fed. Cl. at 400-01, and the Special Master "must ensure that, even without a hearing, a record is created which is sufficient to allow review of the ultimate decision on compensation." *Campbell*, 69 Fed. Cl. at 778; *see also Hovey*, 38 Fed. Cl. at 401; *Dickerson v. Sec'y of Health and Human Servs.*, 35 Fed. Cl. 593, 598-99 (1996); *Murphy* v. *Sec'y of Health and Human Servs.*, 23 Cl. Ct. 726, 730, *aff'd*, 968 F.2d 1226 (Fed. Cir. 1991), *cert. denied*, 506 U.S. 974 (1992). On review, "a special's master's decision to deny a hearing is . . . subject to arbitrary and capricious review." *Campbell,* 69 Fed. Cl. at 778-79; *see also Hovey*, 38 Fed. Cl. at 401; *Burns v. Sec'y of Health and Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993). As this court has previously held, "Vaccine Rules 3(b) and 8(c), and the principles of fairness that underlie them, counsel in favor of holding an evidentiary hearing where testimony reasonably might shed light on the apparent tension between medical records and later recorded recollections, particularly where there are ambiguities or lacunae in the former." *Campbell*, 69 Fed. Cl. at 779-80. By contrast, "[w]hen all material facts are developed in the motion papers, a full trial is useless. 'Useless' in this context means that more evidence than is already available in connection with [the motion] could not

---

however, indicate the presence of a table injury, and so the presumption of causation is inapplicable here.

reasonably be expected to change the result." *Hale v. Sec'y of Health and Human Servs.*, 22 Cl. Ct. 403, 408 (1991).

An evidentiary hearing could not reasonably have been expected to change the result in this case. First, the documentary evidence provided by petitioner did not lay even a credible claim of causation, let alone either a *prima facie* case or the preponderance required to satisfy her burden of proof. To establish an entitlement to compensation, a petitioner is not required to prove that the vaccine was the only cause, or even the predominant cause, of her injuries; rather, she must "prove, by a preponderance of the evidence, that the vaccine was not only a but-for cause of the injury but also a substantial factor in bringing about the injury." *Shyface v. Sec'y of Health and Human Servs.*, 165 F.3d 1344, 1352 (Fed. Cir. 1999); *see also* 42 U.S.C. § 300aa-13(a)(1); *Grant v. Sec'y of Health and Human Servs.*, 956 F.2d 1144, 1148 (Fed. Cir. 1992); *Althen*, 418 F.3d at 1278. To meet this substantiality requirement, the petitioner "must show 'a medical theory causally connecting the vaccination and the injury.'" *Shyface*, 165 F.3d at 1353 (quoting *Grant*, 956 F.2d at 1148). "There must be a 'logical sequence of cause and effect showing that the vaccination was the reason for the injury.'" *Id.* (quoting *Grant*, 956 F.2d at 1148); "a proximate temporal association alone does not suffice to show a causal link between the vaccination and the injury." *Grant*, 956 F.2d at 1148. While the theory of causation must be supported by a "reputable medical or scientific explanation," *id.*, a petitioner need not prove her theory of causation is "medically or scientifically certain." *Knudsen v. Sec'y of Health and Human Servs.*, 35 F.3d 543, 548-49 (Fed. Cir. 1994). In summary, a petitioner's burden is –

> to show by preponderant evidence that the vaccination brought about her injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury. If [petitioner] satisfies this burden, she is "entitled to recover unless the [government] shows, also by a preponderance of evidence, that the injury was in fact caused by factors unrelated to the vaccine." [*Knudsen*, 35 F.3d at 547] (alteration in original) (citation omitted).

*Althen*, 418 F.3d at 1278.

Petitioner put forth no documentary evidence whatsoever proving causation-in-fact. *Per contra*. While the Special Master, by order, instructed petitioner on at least **six** separate occasions to submit documentary evidence from a medical doctor stating that petitioner's pain was the result of the flu vaccination, she did not do so. Rather, as the Special Master found in her opinion, Dr. Pederson's letter "expressly states that he cannot relate her complaints of arm pain to the influenza vaccination." Similarly, Dr. Zimprich's analysis of petitioner's nerve conduction study results suggests several possible diagnoses – but entirely omits any reference to petitioner's recent vaccination. Indeed, in response to the Special Master's repeated requests for evidence reflecting a theory of causation, petitioner provided the Special Master with a letter in which she admitted: "There is no more evidence I can issue on my case." The Special Master, and this court, upon review, must refrain from making findings "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-

13(a)(1). In light of the documentary evidence presented, in addition to petitioner's statement that she had no further evidence to issue, the court cannot say that the Special Master erred in finding that a trial here would have been useless.

As an independent basis for denying the petition, the Special Master noted that even if petitioner had proven that the vaccine caused an initial reaction, petitioner provided no objective proof that this reaction lasted more than six months. In this regard, the Vaccine Act requires petitioner to prove that she "suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine . . . ." 42 U.S.C. § 300aa-11(c)(1)(D)(i). In order to recover successfully, the petitioner must prove this element of her petition – that the reaction lasted for six months – by a preponderance of the evidence. 42 U.S.C. § 300aa-13(a)(1)(A).[3]

The documentary evidence provided by plaintiff does not approach the burden of proof required under section 300aa-13(a)(1)(A). That evidence, including petitioner's handwritten time-line, shows no doctor visits after late January 2006. Petitioner indicated in her amended motion for review that she had filed documentation with the Special Master proving that the pain she perceived had persisted at a minimum of eight months, but the exhibit cited – Dr. Pederson's letter – states merely: "Debra Anderson has had pain in her left arm. This is the arm that she received an influenza vaccine in but I cannot say with any certainty that her pain is a result of the influenza vaccine." It is unclear how this letter is any evidence of the duration of petitioner's injury.[4] In fact, the only documents indicating a duration longer than four months are the affidavit submitted by petitioner in her amended motion for review, in which she states that the

---

[3] The Vaccine Act requires that a petition for compensation must include an affidavit "demonstrating that the person who suffered such injury . . . suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine" when it is filed. 42 U.S.C. § 300aa-11(c)(1)(D)(i). When petitioner filed her petition on March 1, 2006, she failed to include such an affidavit – indeed, petitioner could not have sworn, at that time, that her reaction had lasted for longer than six months, as it had been only four months since she had received the inoculation. At least one Federal Circuit case, however, suggests that this defect may be cured by the filing of supplemental pleadings with appropriate affidavits attached. *See Black v. Sec'y of Health and Human Servs.*, 93 F.3d 781, 785-91 (Fed. Cir. 1996) (holding that a petitioner who failed to allege in his initial petition he had suffered $1000 of non-reimbursable, vaccine-related expenses, as then required by a now-repealed version, 42 U.S.C. § 300aa-11(c)(1)(D)(i), was able to cure the defect by the filing of supplemental pleadings with an appropriate affidavit, so long as he suffered the expenses prior to the running of the statute of limitations). Since petitioner attached such an affidavit to her amended petition for review, the court views the defect in her initial petition as cured, and has considered her petition accordingly.

[4] The only possible way to infer this is from the letter's date – August 3, 2006 – which is roughly nine months after petitioner's inoculation. The record is clear, however, that this letter was produced after continuous requests by the Special Master for additional evidence of causation, and that it took petitioner several months to convince Dr. Pederson to actually write and submit the letter.

"extreme pain lasted for approximately 8 months," and the letter provided to the Special Master, in which she attested that her pain ended on June 13, 2006. Based on the foregoing, this court does not believe that there were "clear issues of factual dispute" remaining, and, therefore, cannot find that the Special Master acted in an arbitrary and capricious manner by choosing not to conduct an evidentiary hearing.

B.

Petitioner further claims that the Special Master erred by not affording her "wide latitude" as a *pro se* litigant. To be sure, when confronted by a *pro se* petitioner, the court holds the form of petitioner's submissions to less stringent standards than those drafted by an attorney. *See Reed v. United States*, 23 Cl. Ct. 517, 521 (1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, even when acting *pro se*, petitioner still bears the burden of "ensuring that the substance of [her] motion adequately states the merits of a claim upon which this court may grant relief." *Trojanowicz ex rel. Trojanowicz v. Sec'y of Health and Human Servs.*, 43 Fed. Cl. 469, 473 (1999); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993); *Davis v. United States,* 36 Fed. Cl. 556, 558 (1996). In particular, "[t]he judge is not responsible for scouring the record for factual mistakes or ferreting out facts that support a position that either side or the special master has overlooked." *Henkel v. Secretary of Dep't of Health and Human Servs.,* 42 Fed. Cl. 528, 530 (1998). Regardless, the record shows that the Special Master prompted petitioner – on a host of occasions – to produce relevant evidence, going so far as to instruct her as to the type of documentation and medical opinions that would be necessary to grant her petition. The record also shows that the Special Master rescheduled at least one status conference to give petitioner additional time to obtain that documentation. On the whole, this court cannot say that the Special Master treated petitioner inappropriately in light of her status as a *pro se* litigant.

### III.  CONCLUSION

In light of the foregoing, the decision of the Special Master is sustained. Petitioner's motion for review is hereby **DENIED**. The Clerk is instructed to dismiss this case, with prejudice.[5] No costs.

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge

---

[5] This opinion shall be unsealed, as issued, after September 10, 2007, unless the parties, pursuant to Vaccine Rule 18(b), identify protected and/or privileged materials subject to redaction prior to said date. Said materials shall be identified with specificity, both in terms of the language to be redacted and the reasons for that redaction.